IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARSHALL T. WAGNER,** | : | CIVIL ACTION NO. 1:23-CV-100 |
| | : | |
| Plaintiff | : | **(Judge Neary)** |
| | : | |
| v. | : | |
| | : | |
| **MIFFLIN COUNTY,** *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

It is a statistical fact that inmate litigation occupies a considerable portion of federal court dockets. To ensure justice for all, the claims of an inmate plaintiff must be given the same initial consideration as those of any other litigant. The applicable rules reflect this principle by requiring courts to view an inmate's factual allegations in the light most favorable to him. This court adheres to that directive.

Presently before the court is the Report and Recommendation ("R&R") (Doc. 107) of Magistrate Judge William I. Arbuckle (Ret.), wherein Judge Arbuckle recommends granting in part and denying in part defendants' motions (Docs. 62, 91) to dismiss. This would result in dismissal of most claims against most defendants in plaintiff Marshall T. Wagner's third amended complaint ("TAC"). Three First Amendment claims—free exercise, free speech, and retaliation would remain. Defendants Warden Jason Kormanic, Deputy Warden Eric Gates, Security Major Brian Busko, Chaplain Gary Kraybill, and Corrections Counselor Ryan Snyder object (Doc. 109) to the R&R to the extent it recommends the free exercise and

freedom of speech claims may proceed. Wagner did not file objections. The court will adopt in part and decline to adopt in part the R&R.

I. **Factual Background & Procedural History**

The court assumes the parties' familiarity with the facts and procedural history of the case and will only briefly recount them as necessary to review the R&R.[1] Wagner initiated this suit on January 19, 2023. (Doc. 1). He filed an amended complaint on March 2, 2023, (Doc. 11), a second amended complaint on July 14, 2023, (Doc. 31), and the operative TAC on February 4, 2024. (Doc. 61). Wagner's claims stem from two periods of pretrial detention at Mifflin County Correctional Facility ("MCCF"). (See generally Doc. 61). The TAC named thirty-two defendants, all affiliated with MCCF, including Warden Kormanic, Deputy Warden Gates, Major Busko, Chaplain Kraybill, and Counselor Snyder. (Doc. 61 ¶¶ 4-30). These five defendants additionally served on the Religious Accommodation Committee ("RAC"), which was "responsible for any religious requests" and "for designing and implementing all . . . religious policies, religious services, etc." (Id. ¶ 7).

A. **Free Exercise Claim**

Wagner alleges that he is a member of the "Church of Jesus Christ Christian/Aryan Nation member" and adheres "to Old Testament Dietary Law." (Doc. 61-2 at 1). So in October 2021, Wagner contacted Food Service Officer Bradley

---

[1] Judge Arbuckle's R&R was comprehensive—100 pages exactly.

2

Hill to request kosher meals. (Id.). This request was granted, and Wagner began receiving kosher meals shortly thereafter. (Id.).

Around November 10, 2021, however, Deputy Warden Gates met with Wagner and gave him forms to request a religious accommodation for the kosher meals, telling him to fill the forms out and return them. (Id.). Wagner did so the same day, but sometime between November 17 and 19, the kosher meals stopped. (Id.). When Wagner inquired about the termination of his meals, he was told by Deputy Warden Gates that he failed to return the religious accommodation forms within the required time frame. (Id.). Wagner inquired with Deputy Warden Gates again in February 2022 about his eligibility to receive kosher meals, to which he was told "it wasn't gonna happen." (Id.).

Wagner was committed to MCCF again on November 5, 2022, and wrote to Officer Hill again requesting a kosher diet. (Id. at 2). He was directed to contact Deputy Warden Gates. (Id.). The same day, Wagner wrote to Chaplain Kraybill, Counselor Snyder, and the shift commander Lieutenant Clint Chambers requesting a kosher diet, informing them of his "beliefs and involvement with the Aryan Nation" and explaining "the tenants of Identity Christianity and the kosher dietary requirements." (Id.). Between November 4 and 10, he continued both orally and in writing to inquire about the kosher meals with various MCCF employees, including all members of the RAC. (Id.). During the same time frame, he asked both the RAC and Officer Hill for alternate protein until his request for kosher meals was approved, but this request was denied. (Id.).

3

Between November 10 and 14, Wagner received a new religious accommodation form from the RAC, which he filled out and returned. (Id. at 3). Wagner's request was again denied by the RAC because MCCF was a "no pork" facility, and the current menu met his dietary needs. (Id.). The denial stated that Wagner's spiritual advisor could contact the RAC, and it would review his request. (Id.).

On November 17, Wagner filed a grievance and contacted the Pennsylvania Prison Society. (Id.). He also repeatedly requested an alternate protein or to have kosher items noted in the commissary catalog, noting he was in a severe caloric deficit. (Id.). The commissary catalog was updated on November 22, noting kosher items in bold, though Wagner alleges numerous items were falsely indicated as kosher. (Id. at 4). The same day, an envoy from the Prison Society came to MCCF and spoke with Warden Kormanic, Deputy Warden Gates, and other members of the RAC about Wagner's kosher diet, though the request was denied. (Id.).

On December 5, 2022, Wagner received a letter from Warden Kormanic responding to his grievance and the Prison Society visit which stated the RAC was going to "stand fast" in its denial of his kosher meal request, and that he could simply purchase kosher items from the commissary if he wished to follow that diet. (Id. at 5). The letter also stated that the RAC declined to meet with Wagner's spiritual advisor, an ordained minister in his church, because a google search revealed he "isn't a savory character." (Id. at 6). Wagner wrote a request asking why he needed a spiritual advisor to verify his religious accommodations request when

4

he had already written a request detailing the tenets of his religion as well as a five page "document/essay" on the different types of kosher diets, which he submitted to Counselor Snyder. (Id.).

Lastly, Wagner's wife filed a formal complaint with the Mifflin County Prison Board and the County Commissioners on December 6, 2022. (Id.). He received a response from Warden Kormanic four days later stating that all religious requests are accommodated at MCCF, and his dietary needs were being met. (Id.).

The R&R recommends Wagner's free exercise claim proceed against the individual RAC members. (Doc. 107 at 33).

**B. Freedom of Speech Claim**

Wagner alleges that between October 28, 2022, through March 30, 2023, corrections officers were making extra copies or labeling his copy requests so Warden Kormanic and Deputy Warden Gates could "read over" what he was copying and send it to the prosecution or judge. (Id. at 15). This included civil motions, grievances, and privileged criminal case materials. (Id.). He separately alleges that all outgoing mail is screened by a mail officer in "violation [of] Title 37 Chapter 95's mail policy." (Id. at 19).

The R&R recommends the free speech claim proceed against Warden Kormanic and Deputy Warden Gates on a theory of supervisory liability, as well as individually against John Doe and a Jane Doe corrections officer. (Doc. 107 at 62).

**II.   Legal Standard**

Specific objections to a magistrate judge's report and recommendation requires the district court to conduct a *de novo* review of the contested portions of the report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). The district court may accept, reject, or modify the magistrate judge's report and recommendation in whole or in part. 28 U.S.C. § 636(b)(1). The district court may also receive further evidence or recommit the matter to the magistrate judge with further instructions. Id. "Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." Weidman v. Colvin, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015) (citing Rieder v. Apfel, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000)).

When a party raises only general objections to a report and recommendation, a district court is not required to conduct a *de novo* review of the report and recommendation. Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984). "To obtain de novo determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report." Id. at 6. When no objection is made to the report and recommendation of a magistrate judge, the court should afford "reasoned consideration," EEOC v. City of Long Branch, 866 F.3d 93, 100 (3d Cir. 2017) (quoting Henderson, 812 F.2d 874, 878 (3d Cir. 1987)), and as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Int'l, Inc., 702 F.Supp.2d

6

465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)).

### III. Discussion

Warden Kormanic, Deputy Warden Gates, Counselor Snyder, Chaplain Kraybill, and Major Busko argue the TAC failed to state a claim for both a First Amendment free exercise and a free speech claim. Additionally, they argue they are entitled to qualified immunity in any event, which the R&R denied.

Both First Amendment claims proceed under 42 U.S.C. § 1983, which provides individuals a cause of action to seek civil redress when they have been deprived of their constitutional rights by state officials in violation of federal law. 42 U.S.C. § 1983. Section 1983 is not the source of any substantive rights; it only provides a remedy "for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a Section 1983 claim, a plaintiff must show "a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Qualified immunity shields state and local officials where liability would otherwise attach unless they violate a right that was clearly established at the time the events transpired. Urda v. Sokso, 146 F.4th 311, 313-314 (3d Cir. 2025). Qualified immunity "protects all but the plainly incompetent or those who

knowingly violate the law." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting White v. Pauly, 580 U.S. 73, 79 (2017)). A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009). Typically, that requires controlling precedent or a "robust consensus of cases of persuasive authority." Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) (internal quotation marks omitted). Under certain circumstances, however, a state official's constitutional "violation was so obvious" that no precedent is necessary. Hope v. Pelzer, 536 U.S. 730, 734-35 (2002) (holding leaving a shirtless prisoner handcuffed to hitching post outdoors in the sun for seven hours was an obvious violation not requiring a specific precedent).

The Supreme Court has repeatedly emphasized that "clearly established law should not be defined at a high level of generality." White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam) (internal quotation marks omitted). Instead, it must "be particularized to the facts of the case." Id. At the same time, the Third Circuit has "repeatedly recognized" that the clearly established prong "presents unique difficulties at the pleading stage." Stringer v. Cnty. of Bucks, 141 F.4th 76, 85 (3d Cir. 2025) (collecting cases). This is because the clearly established prong requires a "fact-intensive inquiry" tailored to the individual case. Id. (citations omitted). Only if "immunity is established on the face of the complaint" will it be upheld on a motion to dismiss. Id. (citations omitted).

### A. Free Exercise Claim

Inmates do not lose the right to freely exercise their religion inside the prison gates; however, this right is necessarily curtailed during incarceration. Waterman v. Farmer, 183 F.3d 208, 213 (3d Cir. 1999) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 125 (1977)). Inmates retain First Amendment rights that are "not inconsistent with [their] status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

Two threshold requirements must be met before alleged religious beliefs are given First Amendment protection. Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981). First, the court must decide whether the religious beliefs are "sincerely held," and second, whether they are "religious in nature, in the claimant's scheme of things." Id. at 1030 (citing United States v. Seeger, 380 U.S. 163, 185 (1965). If either threshold requirement is not met, "the court need not reach the question, often quite difficult in the penological setting, whether a legitimate and reasonably exercised state interest outweighs the proffered first amendment claim." Africa, 662 F.2d at 1030.

The R&R concluded Wagner sufficiently pleaded a free exercise claim against the RAC members for denying his repeated requests for a kosher diet to survive a motion to dismiss. (Doc. 107 at 33). The R&R reasoned that Wagner's citation to the Bible, his membership in the "Church of Jesus Christ Christian/Aryan Nation" and accompanying adherence to "Old Testament Dietary Law," his willingness to have his spiritual advisor come to MCCF to explain the importance of a kosher diet, his

9

severe caloric deficit, his request detailing the tenets of his religion, the five page "document/essay" about a kosher diet, and that he once successfully requested and was granted kosher meals in October 2021, were sufficient at the motion to dismiss stage to allege he had a sincerely held religious belief entitling him to a kosher diet.

Defendants' objection on this point parrots the same arguments made in their motion to dismiss. Complete with citations to Webster's Dictionary definitions for "Aryan" and "kosher," they argue that "as a self[-]professed member of the Aryan Nation, a known anti-Semitic hate group Plaintiff's request for a [k]osher diet is insincere; and (2) Plaintiff failed to plead any factual allegations regarding how a [k]osher diet contributed to his exercise of religion or how non-adherence to a [k]osher diet would violate his religious beliefs." (Doc. 109 at ECF 9). They argue that Wagner did not identify the tenets of his religion aside from stating his membership of in the "Church of Jesus Christ Christian/Aryan Nation," whose name "does not necessarily point to a Christian belief system that follows the bible, particularly in the absence of any allegation by Plaintiff to the contrary." (Id. at ECF 12-13).

Defendants' objection boils down to a simple proposition: Wagner's alleged religious beliefs do not make sense to them so therefore this court should not accept them. This case is, however, at the motion to dismiss stage, where the court "must accept [plaintiff's] factual allegations as true and consider those facts in the light most favorable to" him. Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022). Further, "[it] is inappropriate for a reviewing court to attempt to assess the truth or

falsity of an announced article of faith. Judges are not oracles of theological verity, and the Founders did not intend for them to be declarants of religious orthodoxy." Africa, 662 F.2d at 1030. At the same time, "while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.'" Id. (quoting United States v. Seeger, 380 U.S. 163, 185 (1965). Wagner's TAC, which is liberally construed as a *pro se* pleading, and as the R&R notes, is replete with examples of the efforts made to obtain kosher meals while at MCCF. The court is satisfied that accepting Wagner's factual allegations as true and considering them in the light most favorable to him, he has sufficiently stated free exercise claim against the RAC members for denying him kosher meals.

The court also agrees with the R&R's conclusion denying qualified immunity. The defendants object to the R&R's reliance on Parkell v. Senato, an unpublished Third Circuit opinion it cited to for the proposition that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." 704 F. App'x. 122, 126 (3d Cir. 2017) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). The Parkell court held that the district court erred in granting qualified immunity to two defendants where the plaintiff stated his religion, "Jewish/Wicca," required him to eat kosher meals, and which the district court found to be religious and sincere, but the defendants denied him "based on their assessment of the tenets of his belief system (because his belief system did not comport with Orthodox Judaism)." Id. at 126-27.

The court has already determined that Wagner has sufficiently alleged a free exercise claim. Defendants' argument that they are entitled to qualified immunity, especially where their substantive arguments amount to an attack on the sincerity and religiosity of Wagner's beliefs, requires precisely the type of "fact-intensive inquiry" that make qualified immunity inappropriate at the pleading stage. Accordingly, the court will adopt the R&R with respect to Wagner's free exercise claim.

**B. Free Speech Claim**

Inmates "do not forfeit their First Amendment right to use of the mail[]," including with respect to legal correspondence protected by the attorney-client privilege. Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995, abrogated in part by Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). The Third Circuit has held a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." Id. No proof of actual injury beyond the affront to their First Amendment rights is required. Taylor v. Oney, 196 F. App'x 126, 128 (3d Cir. 2006).

Supervisory liability under Section 1983 can apply if it is shown the defendants, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. v. Luzerne Cnty Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). A supervisor may also be individually liable where they participate "in violating the

plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id. (citing Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

The R&R recommended this claim proceed because Wagner sufficiently pleaded that a John and Jane Doe corrections officer made extra copies of his civil suit materials, grievances, and privileged criminal legal material so Warden Kormanic and Deputy Warden Gates could "read over" the copies and this was at their direction. (Doc. 107 at 60-61). Further, all of Wagner's outgoing mail was screened. (Id.). The R&R concluded that this was sufficient to state a claim for interference with Wagner's legal mail. (Id.). Warden Kormanic and Deputy Warden Gates object, arguing that the R&R improperly combines two separate allegations found in different sections of the TAC to create a claim that Wagner is not bringing. (Doc. 109 at ECF 20-23).

First, Wagner's allegation as to the copies is contained in the section of the TAC concerning his right to access to the courts, which the R&R recommends dismissing. (Id.). Second, the allegation about legal mail is a single sentence reference found several pages later in a section of the TAC regarding conditions of confinement. (Id.). The R&R takes these two separate allegations and states, "[w]e also understands Plaintiff to be asserting a freedom of speech claim relating to the opening, reading, copying and distribution of legal mail he was sending to his counsel." (Doc. 107 at 59). The argument follows that Wagner only alleged civil suit materials, grievances, and privileged criminal legal material was copied and read,

13

and that the allegation that outgoing mail was screened is separate. Only the former allegation as to the copying can be attributed to Warden Kormanic and Deputy Warden Gates for purposes of supervisory liability. In any event, to Warden Kormanic and Deputy Warden Gates, there are no legal issues with the copying of Wagner's legal material because there are no specific allegations he intended to mail them to his lawyer. (Doc. 109 at ECF 21-22). Even if there were, they argue it is only clearly established that opening legal mail, not copying it, violates the First Amendment, and Warden Kormanic and Deputy Warden Gates would be entitled to qualified immunity. (Id. at ECF 24-26).

Although the court is constrained to agree with Warden Kormanic and Deputy Warden Gates in part on their limited point about conflating allegations from two different sections of the TAC, the court disagrees that dismissal is appropriate. The allegation regarding screening of mail is a single sentence attributed to a "mail officer," and is insufficient to bring a supervisory liability claim against Warden Kormanic or Deputy Warden Gates, who the TAC does not mention with respect to this claim. The allegations about making copies should not have been grafted on to the separate claim about legal mail contained in a separate section of the TAC concerning the conditions of confinement. However, the allegations about regarding the copies of Wagner's legal material stands apart from his allegations about the mail and are sufficient to brings a supervisory liability claim against Warden Kormanic and Deputy Warden Gates. It strains credulity to differentiate copying legal material, plainly intended for an attorney, otherwise

14

copies would be unnecessary, from sending and receiving legal mail. And further, defendants' qualified immunity argument on this issue fairs no better. If it is unconstitutional to open privileged legal mail outside the presence of an inmate, it is painfully obvious that prison officials cannot make an end run around the mail system by making copies of an inmate's legal material and directly sending it to prosecutors, as Wagner alleges. Accordingly, the court will decline adopt in part and decline to adopt the R&R with respect to this recommendation.

### C. Uncontested Portions of the R&R

The court has afforded reasoned consideration to the uncontested portions of the R&R and is satisfied that there is no clear error. Accordingly, those portions of the R&R will be adopted.

## IV. Conclusion

Wagner has sufficiently pleaded a free exercise claim against the defendants at this stage in the litigation. He has not, however, sufficiently pleaded a free speech claim with respect to screening his legal mail. Accordingly, the court will adopt in part and decline to adopt in part the R&R. Wagner's free speech mail claim, as well as his other claims in the TAC for which the R&R recommended dismissal will be dismissed with prejudice, as Wagner has already had numerous attempts to properly plead them.

His free exercise claim against Warden Kormanic, Deputy Warden Gates, Major Busko, Chaplain Kraybill, and Counsel Snyder, free speech claim against Warden Kormanic, Deputy Warden Gates, and First Amendment retaliation claim against Warden Kormanic, Deputy Warden Gates shall proceed. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   December 12, 2025